Nash, J.
The first question presented in this case is: “ Did the act of May 4,1877 (74 Ohio Laws, 168), give the plaintiff in error a lien upon the bridges constructed by it under its contract with the railroad company, and in accordance with the allegations contained in the second count of the answer and cross-petition?” This question is an unsettled one in Ohio, and the Supreme Court, in the case of Rutherford & Co. v. Railroad Co., 35 Ohio St., 559, was careful to say that it did not decide whether or not a lien like the one now claimed could be taken. The law under which this lien is claimed reads:
“ Any person who shall perform labor or furnish machinery or materials for constructing, altering or repairing any boat, vessel, or other water craft, or for erecting, altering, repairing or removing any house, mill, manufactory, or other building, appurtenance, fixture, bridge, or other structure, by virtue of a contract with the owner or owners, his or their authorized agents, shall have a lien to secure the pay *52 ment of the same upon such boat, vessel or other water craft, or upon such house, mill, manufactory or other building, appurtenance, fixture, bridge or other structure, and the interest of said owner or owners in the lot of land on which the same shall stand or be removed to.”
It will be observed that in describing the bridge, or kind of bridge upon which a lien may be had, the words “ any bridge” are used. These words, if given their ordinary meaning include a railroad bridge. No restrictive words, excluding a railroad bridge from the operation of the statute, appear. The statute is so comprehensive that it includes all kinds of bridges.
It has been suggested in argument that we may find that the General Assembly did not intend that a lien should extend to railroad bridges. This intent does not appear from the words of the statute. Indeed, they express an intent contrary to that which the defendant in error would have us find.
We have been told that to place a lien upon railroad bridges would seriously interfere with the interests of traffic and trade; that it would be against public policy, as such action would impede the construction of railroads, and that such a lien would be difficult of enforcement. On account of these reasons it is said that the legislature could not have intended to fix this lien upon this class of bridges. These are arguments proper for the legislature to have considered prior to the act of 1874, and which it is presumed to have weighed. If the language used by the legislature in a statute is precise and unambiguous, we conceive it to be our duty to interpret the words in their natural and ordinary sense, although the result may conflict with our ideas of public policy.
The arguments which have been advanced, with force and skill, to exclude railroad bridges from the operation of this statute would apply with equal aptness to bridges owned by turnpike companies.
A turnpike bridge is a part of an entire thing, to wit: the public road, owned by the turnpike corporation. To *53 subject such a bridge to mechanics’ liens would seriously incommode the public and injure traffic and trade. Turnpike bridges belong to a distinctive class of bridges just as plainly as do railroad bridges. It makes a draft upon one’s credulity, to believe that the legislature when it used the words “any bridge” intended to point out a turnpike bridge, but had no reference to a railroad bridge.
Bridges constructed and owned in Ohio by corporations, organized for that sole purpose, invariably connect parts of a public highway. To subject them to a lien, to sell them and to take them away would seriously interfere with public interests.
Exempt all these bridges from mechanics’ liens and all in the way of bridges left to be affected by the statute would be bridges constructed by private persons upon their lands. These are few in number and of little value. We cannot believe that it was the intention of the legislature to give a mechanics’ lien upon these alone.
It has also been said that the reason why our statute does not extend mechanic’s liens to railroad bridges, is that in the building of great and beneficent public works — such as railroads — such large sums of money are required, that it is necessary to authorize the corporation building them, to mortgage their present and future to be acquired property, together with their franchises and income, in order to secure the means necessary to pay the contractors who are to be engaged in the work of construction; that if the lien of this mortgage was to be made subject to a lien by the contractors engaged in building bridges, it would be simply impossible ever to obtain the money to build a railroad, excepting through a capital stock ample for that purpose. It does not occur to us that this result would necessarily follow. In Ohio a railroad -company is required to have a capital stock, and in most cases it is very large. A railroad company is also authorized to issue bonds and mortgage its property in an amount not exceeding the amount of its capital stock. If the capital stock usually subscribed before the work upon a railroad is commenced is actually *54 paid, it would be sufficient to largely forward the work of construction when prudently expended. If this should be done and then a loan made upon mortgage bonds, money enough would be procured to easily complete the railroad and pay all engaged in its construction. The bond-holders would have behind them as security:
1st. The' work completed with the money procured by the stock subscriptions.
2d. The work, rolling-stock, equipment, etc., paid for with the money advanced upon their bonds.
3d. The liability which our constitution and statutes attach to the holders of stock.
Such is the theory of our law in regard to railroad building. The right of a mechanic or builder to have a lien upon a railroad bridge will not interfere with or embarrass companies, who propose to build railroads in this way. It may interfere with companies proposing to build railroads entirely upon borrowed money and without any paid up capital stock. If the giving of these liens will have a tendency to cause the theory of our statutes to be practiced, the statute giving the lien is in accord with sound public policy and is promotive of the value and permanency of railroad securities.
In Railroad v. Lewton, 20 Ohio State Reports, 401, it was held that one who sold a strip of land to a railroad company to be used as a part of its right of way and roadbed, has an equitable lien upon the land so sold. And it was further held in the same case, that “ when the right of the public to maintain the continuity of a public highway precludes the right to sell a section of a railroad, a necessity arises to decree the sale of the whole road in order that equity may be done.”
In this case, the right of the public to maintain the continuity of the Springfield, Jackson & Pomeroy railroad, precludes the right to sell the section or sections of the railroad upon which these bridges are situated. It follows, then, that to protect the lien of the mechanic, the sale of the whole road must be decreed.
*55 It appears from the pleadings that under the contract the plaintiff in error built six bridges. Was this contract an entirety for the building of six bridges, or must it be treated as a several contract between the parties for the building of each of the six bridges ? As the most certain way of making the character of this contract known we have caused it to be given in full in the statement of facts.
We conclude that it must be treated as one contract and not as six contracts. When the bridge companj'- made this agreement in writing and agreed to its terms, it undoubtedly was influenced by the fact, that it was securing one job of work consisting of several bridges. The railroad company was also govered by the same consideration. The number of bridges to be built is not mentioned in the contract, but it provides for the building of all the bridges upon the line of the road between two specified points. It does not provide a price certain to be paid for each bridge, but this depends upon the length of the span. The object sought' to be accomplished by this contract was not to secure the construction of one bridge, or of two bridges, but of all the necessary bridges between two designated points, so that the road could be operated as a railroad. In its characteristics this contract does not differ from the one which was held to be an entire contract in Steamboat Wellsville v. Geisse, 8 Ohio St., 333, and we conclude that the contract now in controversy was an entirety and so treat it.

Judgment reversed.